May it please the Court, Your Honor, may I please reserve three minutes? Sure. All right, thank you. For the record, my name is Robert Drummond. I am the pro se appellant and the Chapter 13 trustee in the case below. In addition to what's in the briefs, there are a couple of practical issues I do want to advise the Court of, and the issues before the Court surface frequently in the Chapter 13 world. According to the U.S. You're also the Chapter 13 trustee, aren't you? I am, correct. According to the U.S. courts, in the year ending June 30th, there were 385,000 Chapter 13 cases filed in the nation. Approximately 84,000 of those were in the Ninth Circuit. So the issues that you have before you today surface frequently, and surface frequently not just in the circuit, but nationally. Practically speaking, what's at issue in this case relates to my objection to confirmation on a good-faith basis, and in large part on payments that were being made by the debtors to secured creditors for the purchase of an Airstream trailer, two ATVs, and a vehicle that was used by the debtor's adult daughter, who was a resident in medical school. The practical effect would have been, had the Court sustained my objection to confirmation, that the Court would have found $43,198 would have been made available to the unsecured creditors over the period of the plan if it had found those payments to be unnecessary for the maintenance of the debtor's home. And that's what the fundamental issue here is, is the bankruptcy court, when it considered the good-faith objection, determined that the reasonableness of the debtor's payments to the secured creditors were beyond its inquiry. The Court made a fundamental error. It determined that the proper test for measuring good faith is to measure the totality of the circumstances, and that makes sense because when the ---- Two different. I mean, doesn't that ---- isn't that excluded from the circumstances, the totality of which you're looking at? Well, there's two different issues there. The first is that when Congress enacted the disposable income test or changed the disposable income test in 2005, that's when it added the exclusion of Social Security to current monthly income. But the disposable income test doesn't measure whether the debtors are acting equitably, and it doesn't measure the totality of the circumstances. But don't all the cases say it's not appropriate to add that back in after the statute has taken it out? But that's a different statute. The good-faith test appears in Section 1325a.3. And the trigger for the disposable income test under Section 1325b is different ---- In the calculation of my current monthly income, do I have to include SSI? No. Why not? Because it's excluded from current monthly income in Section ---- in the definition of current monthly income. Do you see the problem? No. Because it's a completely different measure. How many cases see the same problem I do? Some. Some do. Here's what ---- Judge Pappas makes a good argument. I agree with you. But I'm not sure that it's persuasive. Well, here's the reason why you should adopt Judge Pappas's holding. The good-faith test appears in Section 1325a.3. The Court has an independent duty to examine the Section 1325a factors. One of those factors is the good-faith test, which hasn't changed since 1978. And when this Court entered its order in Goa, it determined that, number one, the test of good-faith is whether the debtor is treating his creditors equitably, and that you measure that by measuring the totality of the circumstances. We don't even get to the disposable income test under Section 1325b until we've actually gone through the 1325a factors. The Court has an independent duty to measure those factors. Section 1325b doesn't even come up unless somebody objects to confirmation. And by the way, it doesn't even come up at all when the Court's measuring whether to confirm a modified plan under Section 1329. The disposable income test, as it was enacted in 2005, was to accomplish this. It was part of the overall act in 2005, BAP CPA, to make sure that when we implemented means-based bankruptcy, that we were doing all we could to make sure that the debtors could pay as much as they could to their creditors. Nothing in Section 1325 references the good-faith test. Nothing in Section 1325 changed the good-faith standard. Congress could have added the same exclusion to Section 1325a3, the good-faith standard, that it added to Section 1325b, but it didn't do that. Sotomayor, I thought your argument was – I thought there were two parts to your argument. Yeah, there really are. Secured creditors and the SSI. Right. Is that right? That's correct. You start off with the secured creditors, which the BAP rejected. The majority of the BAP. Yeah. Well, the majority of the BAP's opinion rejected. Correct. Right? And then they also rejected the SSI. Right. Now, with respect to the SSI issue, there's recently – there are two recent out-of-circuit opinions. Correct. Right? Correct. One from the Fifth, the most recent, and I think –  Ragos. And one from the Tenth, Cramer. Now, Cramer cites the BAP's – the Ninth Circuit BAP ruling, but – Correct. Obviously, they must have thought about it. Well, they did. Both of those cases were – most of those – the large majority of those orders went to the argument that Hamilton v. Lanning, which was the Supreme Court case that said that disposable income was a forward-looking process, that because of Hamilton v. Lanning, that we could toss Social Security into the disposable income test. And I haven't raised that here. I didn't raise that below. Right. You're just focusing on the concept of good faith and totality of the circumstances. That's correct. And Cramer and Lanning – But if you lump it in that way, isn't it just going in through the back door, which you can't do directly? It's only going through the back door if you're trying to measure the same thing. But those two – but the good faith test doesn't measure the same thing as the disposable income test under Section 1325b. And this Court determined in Goa that the good faith test is a broad test, and it's supposed to be a broad test so that you can examine the facts and circumstances unique to every case. Let me ask you, if we went your way on this particular issue, wouldn't we be creating a circuit split? Yes. Yes, you would. Why would we want to do that? Because the decisions of the Fifth Circuit and the Tenth Circuit are wrong. The good faith test, when they entered those two decisions, they were largely examining the disposable income test and whether Social Security should be included in those. Then, as an aside, they also said that because it's in Section 1325b, that supersedes and it also can't be included in Section 1325b. It didn't examine it. What would be the difference if you added back, if you – if you – what would be the consequences of adopting your position here with respect to SSI? Let me – well, the consequences would be that the Court could make a determination, a subjective determination, as to the debtor's intentions with their plan by examining all of the debtor's income and all of the debtor's expenses. The Court should examine, do a subjective examination, should consider those things to make sure it gets a – makes a subjective examination. The good faith – or the disposable income test in Section 1325b isn't a subjective examination. It depends in part on internal revenue service standards, which are based on Bureau of Labor statistics, numbers. It's not a subjective determination at all. And the Court can't make a determination as to whether the debtors are treating their creditors equitably. Ginsburg. So how does that – relate that over to the secured creditor argument that you started off with. Okay. Is your argument that is they just didn't need the – they just didn't need to incur the expense of the Airstream? Well, I didn't even take it that far, because my argument is that when the Court held that it couldn't examine the reasonableness of those expenditures, that it wasn't measuring the debtor's good faith, that it was eroding the good faith standard, and that it should have been able to examine the reasonableness of those expenditures, not just those expenditures, but it should be able to measure the reasonableness of all of the debtor's expenditures when it's trying to determine the debtor's intentions and whether the debtors are treating the creditors with good faith. So what do you think should happen to the secured creditors in this case? Well, I think that the Court should inquire as to the reasonableness of those expenditures and why the debtors needed the Airstream trailer and the two ATVs. Those findings were incomplete on – at the bankruptcy level. The Court never made any finding with regard to the second ATV. It didn't require – it didn't inquire into the reasonableness of the vehicle that was used by the daughter, saying that the reasonableness of that expenditure was beyond its inquiry. So secure creditors, you just lose. It depends on whether it's a reasonable expenditure or not. Debtors need a car to get around, so the debtors should be entitled to – the Court should make a finding that it's reasonable. You think some of them were unreasonable. That was my position at the bankruptcy court level. What happens to those? Just track it through for me. Well, one of a couple of things could happen. The debtors could surrender the collateral. The debtors could dismiss the case, first of all. Chapter 13 is a voluntary proceeding. Right. So they could just go away. They could surrender the collateral back to the secured creditors so that they get their collateral back. They could – And what's the collateral? They could pay the creditors in full. And what's the collateral that they would surrender? The trailer. Right. Just give them back. Correct, to the secured creditor. And thereby freeing up income and making it available to plan payments to pay the unsecured creditors. In my perfect world as a Chapter 13 trustee, that's what would happen. All right. I'll – You want to save some time for rebuttal? Yes, please. You know, I don't mind creating a circuit split. I did two years ago in a bankruptcy case. I went against two other circuits, and I was affirmed in Elena Kagan's first opinion on the Supreme Court. So circuit split, it's a good reason to do it, as Justice Kennedy told us. When the other circuits are wrong. That's well-reasoned. May it please the Court, Edward Murphy representing the appellees and debtors in this case, David and Sharon Welsh. The Bankruptcy Court did consider the – and used the correct legal standard. It – it begins the discussion on – on good faith with the totality-of-circumstances standard on page 19 of its opinion. That's excerpt page 57, and continues on for four or five pages, analyzing the specific issues raised by the trustee, the – the issues about making payments to secured creditors, and also the treatment of the Social Security income. In addition to that, before going into its discussion on – on the good faith issue, it went through extensive findings of fact with respect to – to those issues, discussing the testimony that Sharon Welsh gave at the hearing on confirmation and discussing the schedules and how the plan deals with income expenses and payments. So what was the – the ultimate legal conclusion or legal ruling with respect to the secured creditors by the Bankruptcy Court? The Court held that it was not a violation of the good faith standard. What they were doing was not a violation of the good faith standard. The – the Court said that with respect to the ATVs, that, you know, they are used for necessary purposes, plowing a road. In addition to that, Sharon Welsh testified, and this is in the transcript, that they use an ATV to haul lumber to their place because they heat with wood, and sometimes in extremely bad winter weather, they leave an ATV at the bottom of the – of the driveway because the Subaru can't get up, despite the fact it's a four-wheel drive vehicle, it sometimes can't get up the driveway. So there are – there are uses there. With respect to the – the vehicle for the daughter, David signed the promissory note. He owns the car. It's titled in his name. All he is doing is paying the debt that he has. He has made that car available to his daughter because she needed transportation, you know, around Seattle where she was doing her work. Sotomayor, were his conclusions that these were reasonable expenditures? I don't – I don't know that he necessarily used the word that these are reasonable expenditures, but I think from the discussion, he did conclude – I think you can definitely say that he did conclude that they were reasonable expenses. Yes. I – whether he – I don't think he actually used the word reasonable, but he didn't have any problem with them being unreasonable, and I think if he did have a problem with them being unreasonable, he certainly would have said so. With respect to the Airstream trailer, he said that just wasn't enough to support a good faith or a finding of there not being good faith. So the court – the court – he made factual conclusions, and, of course, whether the debtors are acting in good faith or not is ultimately a factual conclusion, and it's judged by the clear and convincing standard, which is a deferential standard. I'd like to address a little bit about, you know, the history of, you know, the disposable income rule here, because I think it's relevant in how secure debt is, and I think that is handled in Chapter 13 cases. Before BAP CPA was adopted in the year 2005, there was a disposable income requirement in the Bankruptcy Code in Section 1325b. Debtors were required to utilize their disposable income to make payments. They had to dedicate their entire disposable income over the life of the plan to payments under the plan. Now, it didn't say to unsecured creditors, as, you know, it just said to payments under the plan. And, of course, payments under the plan can include payments to secured creditors as well as unsecured creditors. Congress then changed 1325b-2 in 2005, or b-1, to say that projected disposable income had to be used to pay to unsecured creditors over the life of the plan. And then it went through a ‑‑ it adopted a means test to determine what projected disposable income was, and as a part of that means test, it created a situation where debtors were able to subtract from their current monthly income the amount of money that they were spending on their secured debt. So, in effect, there is less change there than, you know, one might think between pre-BAP CPA law and post-BAP CPA law. It has always been possible to make payments to secured creditors under ‑‑ in Chapter 13 cases. In addition to that, what is, I think, really significant is one portion of the means test as it relates to payments to unsecured creditors, which is cited in the briefs, and that is a distinction that Congress drew with respect to payments to secured creditors who are secured by property that is necessary for the support and maintenance of debtors and property that is not necessarily secured by or necessary for the support and maintenance of the debtors. In the case of property necessary for the support and maintenance of debtors, such as the house, the car, and that sort of thing, debtors are allowed to subtract not only the payments that become due during the life of the plan on the contracts, on the security agreements, but they're also able to adopt or to subtract other amounts that they're required to pay in order to maintain possession. And, of course, the most common types of those kinds of debts that we run into in the Chapter 13 practice are payments on real estate taxes and payments on insurance with respect to the house, and also curing arrearages, both with respect to the house and the car. Debtors are able to subtract those kinds of payments in order to maintain possession of necessary items for the support and maintenance of the family. Debtors are not allowed to subtract those kinds of items in order to maintain possession of other collateral, collateral that is not necessary for the support and maintenance. It's a very clear distinction that Congress made, and they made it in 2005. And so I think we have to conclude that Congress went into this with their eyes wide open, and they knew exactly what they were doing. And what the debtors are doing here is consistent with what Congress had in mind when they amended the law in 2005. They're taking advantage of an advantage that the law gives. And, again, as I said, it's not that much different from things that occurred before BAP CPA, other than possibly before BAP CPA, they might have been able to get to subtract arrearages on so-called luxury items or items that were not necessary. Now they clearly can't. So maybe BAP CPA, to a certain extent, imposed a greater restriction than was available prior to BAP CPA. With respect to the Social Security income issue, I don't think Congress can be any clearer with respect to how Social Security payments are not to be counted in the Bankruptcy Code. And that's the question. Ginsburg. So they're counted in a couple of instances. You can look at them in a couple of instances. Or you can look at Social Security income in several instances in the Code. Well, certainly with respect to calculating disposable income, no, I don't think so. There are other areas where you can, very limited. Well, that may be. I'm not going to argue that point. I focused on Social Security income with respect to disposable income in Chapter 13. What the trustee is arguing here is that because the debtors are receiving Social Security income, they should be forced to make a larger payment to their unsecured creditors. That's essentially what the argument is. First of all, if you look at Schedules I and J, and just disregard the means test, just look at Schedules I and J, these aren't, this isn't something where they're setting aside $1,165 every month and just piling up a large pile of cash. But even in a situation like that, the law is quite totally clear that Social Security income is not counted in determining current monthly income or disposable income. And that's not the only instance of an income stream that is excluded for calculating disposable income. That should be considered. There are other instances in which Social Security income stream is considered. Pardon me? There are other instances in which it is considered, as Judge Pappas points out. Well, but not in calculating the disposable income payment in Chapter 13 cases. And the trustee is attempting to use the receipt of that income to force the debtors not to allow the debtors to make larger payments to creditors. Who is the daughter? She was a medical student who was in her residency. So she's a practicing doctor. She may be now. She wasn't back when we were going to do that. She's a doctor, and she's got this car, but technically it's a debt because he signed for it. It's a debt that David signed for. The daughter didn't sign for it. He's just letting her use it. Yes. Yes. He's letting her use it. Yes. So that's being protected by this plan. Yes. That's part of Judge Pappas's point. This is ridiculous. These are, you know, people have plenty of income, and they're able to shelter this car that their doctor daughter is using. Well, the car doesn't cost a lot of money. I mean, it's just $150 to $200 a month. And it's a $150, $200 a month that's not going to the unsecured creditors. Well, that's correct. But the debtors are acting consistent with the law. I mean, this is not ---- And Judge Pappas says, yeah, that's fine, but it's abusive. And that's why we use this good-faith test, because they're continuing to deal with all of these things, and the unsecured creditors are getting hosed down. No. The unsecured creditors are getting what they're entitled to get under the terms of the Bankruptcy Code. Not if it's proposed in the absence of good faith. Well, the calculations on the means test are consistent. And quite frankly, I would ---- They're consistent with the code, correct? I would contend that if you're acting consistent with the language of the code, you're acting in good faith. Isn't that the whole theory of the good-faith approach, that you're not tied up by what the code says? You take a look. Okay, the code says X, Y, and Z. But you take a look to see whether this is just in bad faith. You're taking advantage of things to hose people down, and that's not right. And Judge Pappas points out how this works. $42,000 at least is lost by this on the basis of items that he doesn't believe these people need. Well, he may think that, but I think that's a factual conclusion, and that gets you into the standard for, you know, reviewing conclusions of fact in these confirmation cases, as opposed to conclusions of law. And the bankruptcy court did reach a factual conclusion that is plausible, not impossible, and is supported by the evidence. I mean, the car in this instance is a vehicle that David owns, and he signed the note, so he is liable for it. And he may have another use for it after it's paid off and after the daughter is done with it. The reasonableness question was a factual question that the bankruptcy court decided. And in this case, that was decided in favor of the debtors. It's a very deferential standard, and it's not something that the trustee has argued about in this Court. Did you want to say anything about the S, the so anything further? The Social Security issue? No. I'm fair. Thank you. All right. Mr. Butler. On rebuttal, I just want to take a minute to address the Social Security issue, because there's really a twofold approach to that by both the debtors and by the amicus that I need to explore. And the first is this. There's a huge danger in adopting the position that had been taken by the debtors in this case, that the Social Security statute prohibits the consideration of Social Security income in any fashion under the Bankruptcy Code. The amicus has alleged that when a bankruptcy case is filed, that income becomes subject to the bankruptcy laws in violation of the Social Security statutes by the creation of the bankruptcy estate. They've taken the position that when the court enters an order confirming a plan, it makes Social Security income subject to the bankruptcy laws in violation of the Social Security statute. This Court should reject that as being overbroad. And the reason why, as you observed, Judge Peyos, is there are places in the Bankruptcy Code, and as Judge Pappas recognized in his dissent, there are places in the Bankruptcy Code where Congress meant to consider Social Security income. One of the reasons for enacting the law in 1978 was to have debtors who live on Social Security be eligible for Chapter 13. And taking the amicus in that position to its extreme would prohibit debtors who live only on Social Security from even being eligible for Chapter 13. They couldn't propose a confirmable plan if entering that order confirming the plan made the Social Security income subject to bankruptcy laws. So that interpretation is overbroad. What this Court should determine is that Congress made the exclusion in the disposable income test because it wanted to be excluded or wanted it to be excluded in the disposable income test. It didn't put the exclusion in the good-faith test because it wanted it to be included in the good-faith test. Now, that doesn't make any sense to me. Well, the argument is the problem is it's very specific. Right. Very specific. So why would you put it back in at the back end? Well, you put it into the you put the exclusion into the disposable income test because what the disposable income test is going to do, and this was recognized by both the majority and the dissent at the BAP level, it was meant to make sure there was a floor, not a ceiling, but a floor of what was going to be paid to the unsecured creditors. Now, Congress could have put that same exclusion into the good-faith test, but wanting it to be a global consideration of the subjective factors and a subjective examination of the facts and circumstances that are unique to each test, each case, Congress didn't put the exclusion in the good-faith test. So my this Court should hold that it's But, you know, by the way the whole plan was to make sure that they're trying to manipulate their money. There's no get-around provisions in the code. Well, there's nothing egregious about what they're what they've done with respect to SSI. It's consistent with the code. But it's not consistent with the code. It's consistent with the disposable income test. In this, but there are other factors that the Court considers when it's confirming the plan. And the broad test, the subjective test, is the good-faith test. The disposable income test is not a subjective test and not a subjective analysis. Gershengorn Anything else? No, that's it. Thank you. Thank you. Thank you, counsel. We appreciate your arguments on this interesting case, and the matter is submitted.
judges: Ripple, Trott, Paez